UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. CAVENDER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 16-cv-00703-KAW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 25 |

On July 22, 2016, Defendant Wells Fargo filed a motion to dismiss Plaintiffs Mark and Pamela Cavender's first amended complaint. (Def.'s Mot., Dkt. No. 25.)

On September 1, 2016, the Court held a hearing, and, for the reasons set forth below, GRANTS Wells Fargo's motion to dismiss without leave to amend.

## I.  BACKGROUND

Plaintiffs Mark A. Cavender and Pamela J. Cavender have owned the real property located at 282 Barrett Circle, Danville, California ("Subject Property") since 1992. (9/24/92 Deed of Trust, Def.'s Req. for Judicial Not., "RJN," Dkt. No. 26, Ex. A.) On November 3, 2005, Plaintiffs refinanced their first and second lien mortgage loans, secured by deeds of trust, with Lenox Financial Management Corporation for the Subject Property. (Pls.' First Am. Compl., "FAC," Dkt. No. 20 ¶ 1; RJN, Exs. E & F.) Defendant Wells Fargo is the servicer for the first lien mortgage loan. (FAC ¶ 12.)

Thereafter, Plaintiffs fell behind on their payments, and were $32,792.65 in arrears on the first deed of trust, and, on February 22, 2011, a Notice of Default ("NOD") was recorded with the Contra Costa County Recorder's Office. (RJN, Ex. G.)

On May 31, 2011, Plaintiffs received a Notice of Trustee's Sale with a scheduled sale date

of June 27, 2011. (RJN, Ex. H.) The notice of default was rescinded on February 2, 2012. (RJN, Ex. I.)

By February 2015, Plaintiffs concede they had "failed to make several mortgage payments." (FAC ¶ 24.) On February 24, 2015, a notice of default was recorded indicating that Plaintiffs owed $31,700.19 in arrears on the mortgage loan secured by the First Deed of Trust. (FAC ¶ 24; February 2015 NOD, RJN, Ex. J.) Plaintiffs allege that the amount of the arrears stated in the NOD was incorrect. (FAC ¶ 25.) The Declaration of Compliance attached to the February 2015 Notice of Default represented that Wells Fargo had exercised due diligence to contact the borrower to discuss options to explore alternatives to foreclosure, in accordance with California Civil Code § 2923.55(f). (FAC ¶ 30; RJN, Ex. J at 4.) The declaration was dated June 24, 2013, even though the NOD to which it was attached was not signed until February 21, 2015. *See ids.*

Plaintiffs allege that they submitted a complete loan modification application to Wells Fargo in April 2015. (FAC ¶ 34.) Wells Fargo acknowledged receipt of the initial application in mid-June 2015. (FAC ¶ 39.) Plaintiffs had several conversations regarding required additional documentation after the submission of their initial application, and Wells Fargo worked with them to collect documents in aid of their modification application until at least July 2015. (FAC ¶¶ 35-42.)

On August 6, 2015, Plaintiffs filed a lawsuit in Contra Costa County Superior Court for violations of the Homeowner's Bill of Rights, fraud, promissory estoppel, slander of title, negligence and negligence per se, violation of the Rosenthal Fair Debt Collection Practices Act, and violation of Business and Professions Code § 17200. (RJN, Ex. K.)

On September 21, 2015, Wells Fargo rescinded the February 2015 Notice of Default. (RJN, Ex. L.) On December 3, 2015, and while the state court action was pending, Wells Fargo recorded another notice of default with the Contra Costa County Recorder's Office. (FAC ¶ 53; December 2015 NOD, RJN, Ex. M.) According to the NOD, Plaintiffs owed $94,817.67 as of December 2, 2015. (December 2015 NOD at 1.) The December 2015 NOD included a Declaration of Compliance dated November 18, 2015. *Id.* at 4. Plaintiffs also allege that the

amount of arrears listed in the December 2015 NOD was inaccurate. (FAC ¶ 54.)

Meanwhile, Plaintiffs continued pursuing their case against Wells Fargo in Contra Costa Superior Court. (*See* Docket for *Cavender v. Wells Fargo Bank*, Case No. CIVMSC15-01398, RJN, Ex. N.) Ultimately, Wells Fargo demurred the First Amended Complaint, which was sustained in full on January 26, 2016. (RJN, Exs. O & P.) On February 10, 2016, Plaintiffs filed a voluntary dismissal in the state court action. (Def.'s RJN, Ex. Q.)

On February 11, 2016, Plaintiffs filed the instant action in federal court. Thereafter, the parties engaged in alternative dispute resolution efforts, but were unable to resolve the lawsuit.

On June 21, 2016, Plaintiffs filed a first amended complaint. (FAC, Dkt. No. 20.) Plaintiff's amended complaint alleges six causes of action: (1) Fraud; (2) Promissory Estoppel; (3) Slander of Title; (4) Negligence and Negligence Per Se; (5) Violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788; and (6) Violation of Business and Professions Code § 17200 et. seq.

On July 22, 2016, Wells Fargo filed a motion to dismiss the first amended complaint. (Def.'s Mot. to Dismiss the First Am. Compl., "Def.'s Mot.," Dkt. No. 25.) On August 5, 2016 Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 30.) On August 12, 2016, Wells Fargo filed its reply. (Def.'s Reply, Dkt. No. 32.)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### B. Request for Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity

no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III.  DISCUSSION

#### A.  Request for Judicial Notice

As a preliminary matter, Wells Fargo asks that the Court take judicial notice of a number of documents in support of its motion to dismiss. (Def.'s Req. for Judicial Not., "RJN," Dkt. No. 26.) The documents are purportedly true and correct copies of: A) a Deed of Trust recorded with the Contra Costa County Recorder's Office on September 30, 1992; B) a Deed of Trust with Assignment of Rents (with Acceleration Clause) recorded with the Contra Costa County Recorder's Office on March 29, 1993; C) a Deed of Trust recorded with the Contra Costa County Recorder's Office on December 3, 2001; D) a Deed of Trust recorded with the Contra Costa County Recorder's Office on February 13, 2002; E) a Deed of Trust recorded with the Contra Costa County Recorder's Office on November 15, 2005, as Document No. 2005-0442139-00; F) a Deed of Trust recorded with the Contra Costa County Recorder's Office on November 15, 2005, as Document No. 2001-0442140-00; G) Notice of Default and Election to Sell Under Deed of Trust, dated February 22, 2011, and recorded with the Contra Costa County Recorder on February 24, 2011; H) Notice of Trustee's Sale Trust, dated May 31, 2011, and recorded with the Contra Costa County Recorder on June 2, 2011; I) Notice of Rescission of Notice of Default, dated February 2, 2012, and recorded with the Contra Costa County Recorder on February 8, 2012; J) Notice of Default and Election to Sell Under Deed of Trust, dated February 21, 2015, and recorded with the Contra Costa County Recorder on February 24, 2015; K) Complaint, dated August 5, 2015, and filed August 6, 2015, in Contra Costa County Superior Court in *Cavender v. Wells Fargo Bank, N.A.,* Case No. CIVMSC15-01398; L) Notice of Rescission of Notice of Default, dated September 21, 2015, and recorded with the Contra Costa County Recorder on

September 24, 2015; M) Notice of Default and Election to Sell Under Deed of Trust, dated December 2, 2015, and recorded with the Contra Costa County Recorder on December 5, 2015; N) Public docket in *Cavender v. Wells Fargo Bank, N.A.,* Case No. CIVMSC15-01398; O) First Amended Complaint, dated October 6, 2015, and filed October 7, 2015, in Contra Costa County Superior Court in *Cavender v. Wells Fargo Bank, N.A.,* Case No. CIVMSC15-01398; P) Order Re: Demurrer to First Amended Complaint, dated January 28, 2016, and filed January 29, 2016, in Contra Costa County Superior Court in *Cavender v. Wells Fargo Bank, N.A.,* Case No. CIVMSC15-01398; Q) Request for Dismissal, dated and filed by Plaintiffs on February 10, 2016 in Contra Costa County Superior Court in *Cavender v. Wells Fargo Bank, N.A.,* Case No. CIVMSC15-01398.

Plaintiffs oppose Defendant's request for judicial notice. (Dkt. No. 31.) Specifically, Plaintiffs object to Exhibits A through J, L, and M on the grounds that they "contain information which is in dispute and form the basis for Plaintiff's claims against Wells Fargo." *Id.* at 1.

As Plaintiffs correctly state, Exhibits A through D are deeds of trust for mortgage loans that Plaintiff obtained prior to the mortgage note and deed of trust at issue in this litigation. *See id.* at 2. As such, however, they are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Similarly, Exhibits E through J, L and M are also official records that have been recorded with the Contra Costa County Recorder's Office. That Plaintiffs dispute the accuracy of some of these documents does not mean that they are not authentic.

Accordingly, the Court GRANTS Wells Fargo's request for judicial notice.

**B.  Motion to Dismiss**

Wells Fargo seeks the dismissal of all six of Plaintiffs' causes of action.

**i.  Fraud**

Plaintiffs' first cause of action is for fraud. (FAC ¶¶61-79.) Fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (a plaintiff alleging fraud must state with

6

particularity the circumstances constituting fraud). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Under California law, the elements of fraud are

> (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages.

*West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 792 (2013) (citing *Lazar v. Superior Court* 12 Cal.4th 631, 638 (1996)).

Here, Plaintiffs allege that Wells Fargo is liable for fraud on the grounds that the compliance declarations attached to the February 2015 NOD and the December 2015 NOD are supposedly false. (FAC ¶¶ 65-66.) At the hearing, Plaintiffs clarified that the compliance declaration attached to the December 2015 NOD fraudulently stated that Wells Fargo had complied with California Civil Code § 2923.55, because Wells Fargo checked the box stating that "[t]he mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied." (RJN, Ex. M at 4.) At the hearing, Wells Fargo explained that this box is generally checked when the servicer is unable to make contact with the borrower. Here, however, Wells Fargo had been in contact with Plaintiffs in connection with the earlier-filed state court case, and had assisted Plaintiffs in submitting additional documentation in support of their loan modification application. The Court notes that the box technically does not contain false information even if it is generally checked in situations where a borrower is unable to be contacted. *Id.* Notwithstanding, the operative complaint does not describe how Plaintiffs were damaged by a compliance declaration that contained, at worst, a harmless error. At the hearing, Plaintiffs explained that they did not intend to allege that the February 2015 NOD was damaging,

but that they were damaged by the subsequent Notice of Trustee's Sale,[1] as well as the December 2015 NOD. Since Plaintiffs' factual allegations contradict any claim that Wells Fargo failed to comply with California Civil Code § 2923.55, there is no actionable fraud claim in connection with the compliance declarations.

In addition, Plaintiffs allege that the various Wells Fargo employees who assisted them with submitting paperwork for their loan modification application falsely represented that Wells Fargo was reviewing them for a modification and would not proceed with the foreclosure process while the application was pending. Plaintiffs' conclusory allegation that Wells Fargo lied about this does not satisfy Rule 9(b)'s heightened pleading requirements. Indeed, the facts, as alleged, contradict Plaintiffs' assertion that the employees lied about reviewing their application, because the operative complaint describes Wells Fargo's efforts to obtain additional information from Plaintiffs to complete the application. (FAC ¶¶ 35-42, 67-70.) To determine the need for additional information means that someone was reviewing the information submitted. Further, Plaintiffs were not entitled to a disposition on their application until the application was complete. And despite the allegation that Plaintiffs submitted a complete application in April 2015, the subsequent communications described in the complaint clearly contradict that allegation, which means that Wells Fargo was well within its rights as servicer to record the December 2015 NOD.

In addition, Plaintiffs fail to plead with particularity the damages suffered, and instead rely on boilerplate recitations. At the hearing, Plaintiffs reiterated the argument that their reliance on Wells Fargo's statements resulted in a loss in property value, that they forewent other financing opportunities, and that they suffered reduced creditworthiness. (*See* Pls.' Opp'n at 5.) Plaintiffs rely on *West* for the proposition that foregoing alternative solutions is a cognizable damage in the foreclosure context. (Pls.' Opp'n at 5.) *West*, however, is distinguishable. In *West*, the court

---

[1] There is a factual dispute as to whether a notice of trustee's sale was recorded in connection with the February 2015 Notice of Default. At the hearing, Wells Fargo contended that there was no such document recorded, and Plaintiffs' counsel was unsure. The Court notes that a notice of trustee's sale was recorded on June 2, 2011, in connection with an earlier notice of default that was later rescinded. (*See* RJN, Ex. H.) While the FAC mentions other recorded documents, it does not specify when this notice of trustee's sale was recorded. This factual dispute, however, has no bearing on the disposition of the instant motion.

found that the servicer's misrepresentation that no foreclosure sale was scheduled caused the plaintiff to forego taking legal action to stop the imminent foreclosure sale. 214 Cal. App. 4th at 795 (sale occurred two days after the plaintiff was told that there was no sale scheduled). Here, Plaintiffs hired counsel to stave off foreclosure, are still in possession of the Subject Property, and there is no sale currently scheduled. Plaintiffs' allegation that their creditworthiness suffered due to the recordation of the December 2015 NOD is unavailing, given that their credit undoubtedly suffered as a result of years of missed mortgage payments. Plaintiffs' argument that the recordation of the NOD reduced the property value is also unavailing. Based on the allegations in the operative complaint, Defendant had a right to file the December 2015 NOD, because Plaintiffs were, in fact, in default.

Accordingly, Plaintiff's fraud claim is dismissed without leave to amend, because any amendment would be futile.

### ii. Promissory Estoppel

Plaintiffs' second cause of action is for promissory estoppel. (FAC ¶¶ 80-91.) Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (quoting *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal.3d 665, 672 (1974).) California has adopted the Restatement's view on promissory estoppel claims. *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (2005). Thus, the elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Id.* (citation omitted.)

Here, Plaintiffs allege that Wells Fargo promised that it would review the loan modification application, and that Wells Fargo would not pursue foreclosure while the review was pending. (FAC ¶¶ 81-82.) At the hearing, the parties essentially acknowledged that the loan modification application was never completed.

In its motion to dismiss, Defendant argues that Plaintiffs' promissory estoppel claim is

subject to dismissal on the grounds that they cannot plead a prima facie case. (Def.'s Mot. at 13.) Specifically, Defendant argues that Plaintiffs cannot allege that there was detrimental reliance on the review of the loan modification application because there was no guarantee that a modification would be offered. (Def.'s Mot. at 15-16.) In opposition, Plaintiffs contend, without elaboration, that there was detrimental reliance. (Pls.' Opp'n at 5-6.)

To sustain a promissory estoppel cause of action, Plaintiffs' reliance has to be both reasonable and foreseeable, and they must have suffered an injury as a result of that reliance. First, any reliance on a potential loan modification is unreasonable, as borrowers have no right to a loan modification. At the hearing, Plaintiffs stated that they waited on the process, because, even though a modification was not guaranteed, it would be preferable to obtaining other financing. It is even more unreasonable, however, to rely on a potential loan modification without a completed application. At the hearing, Defendant stated that Plaintiffs stopped responding to its requests to verify their income, and, thus, the application was never complete.

Second, despite Plaintiffs' protestations to the contrary, they have failed to identify damages sustained other than they allegedly had "alternative financing available." (FAC ¶ 86.) Indeed, at the hearing, Plaintiffs could not identify the source of alternative financing or explain why they have not since obtained such financing. Therefore, Plaintiff cannot plead sufficient facts to state a cause of action for promissory estoppel.

Accordingly, Plaintiff's cause of action for promissory estoppel is dismissed without leave to amend, because any amendment would be futile.

### iii. Slander of Title

Plaintiffs' third cause of action is for slander of title. (FAC ¶¶ 92-97.) Specifically, Plaintiffs claim that Defendant made false statements in connection with the Declaration of Compliance attached to the two notices of default, and that Wells Fargo had the legal right to record the Notice of Trustee's Sale. (FAC ¶ 93.) Under California law, to prove slander a plaintiff must plead and prove: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." *Alpha & Omega Dev., LP v. Whillock Contracting, Inc.*, 200 Cal. App. 4th 656, 664 (2011). In the amended complaint,

10

Plaintiffs allege that the false information included the incorrect amount of arrears contained in the NODs, and that Wells Fargo complied with California Civil Code § 2923.55 prior to recording the NODs. (FAC ¶¶ 93, 95.)

Defendant argues that the cause of action fails because California Civil Code § 2924(d) expressly states that notice requirements of non-judicial foreclosure sales are privileged communications. (Def.'s Mot. at 16 (quoting *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333-34 (2008).) Indeed, "lack of privilege is an essential element of the cause of action [for slander of title]." *Hill v. Allan*, 259 Cal. App. 2d 470, 490 (1970).

In opposition, Plaintiffs argue that the FAC alleges malice in the recording of the NODs, which defeats a claim of privilege. (Pls.' Opp'n at 6; FAC ¶ 94.) The operative complaint, however, does not allege facts suggesting that Wells Fargo acted maliciously by recording either NOD. At the hearing, Plaintiffs clarified that the compliance declaration attached to the December 2015 NOD, which stated that Wells Fargo had complied with California Civil Code § 2923.55, was knowingly incorrect. As discussed above, the box checked is not technically false even if generally used in situations where the servicer is unable to contact the borrower. *See* discussion *supra* Part III.B.i. Furthermore, even if it was untrue, the failure to check the proper box on the declaration is not an indication of malice. At worst, Wells Fargo was negligent, because it could have easily checked the correct box that stated that contact was made, and the NOD would have still been properly recorded. *See Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 344 (2008). Since Plaintiffs are unable to plead facts to support the existence of malice, the recordation of the NOD is privileged, so whether the amount of the arrears is inaccurate is irrelevant. Accordingly, Plaintiffs cannot satisfy the "unprivileged" element, and the slander of title claim fails as a matter of law.

Moreover, Defendant argues that the cause of Plaintiffs' injuries is their failure to make timely mortgage payments, rather than the filing of the NODs, which correctly stated that Plaintiffs were in default. (Def.'s Mot. at 17.) Plaintiffs, however, failed to address this argument in their opposition. At the hearing, Plaintiffs explained that the direct and pecuniary loss sustained was the loss of property value for the purposes of sale. The Court need not address the speculative

11

1  nature of the claimed damages, because the claim fails as a matter of law.

2  In light of the foregoing, the third cause of action is dismissed without leave to amend,
3  because any amendment would be futile.

### iv. Negligence and Negligence Per Se

Plaintiffs' fourth cause of action is for negligence and negligence per se. Under California law, to prove negligence a plaintiff must plead and prove: (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages. *Palm v. United States*, 835 F. Supp. 512, 520 (N.D. Cal 1993). Generally, lenders do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n,* 231 Cal. App. 3d 1089, 1095–96 (1991); *see also Rijhwani v. Wells Fargo Home Mortgage, Inc.*, C 13-05881 LB, 2014 WL 890016, at *14 (N.D. Cal. Mar. 3, 2014).

Plaintiffs allege that Wells Fargo had a duty to use reasonable care in complying with California Civil Code §§ 2923.55 (exploring foreclosure alternatives), 2923.6 (dual tracking), and 1788 (the Rosenthal Fair Debt Collections Practices Act). (FAC ¶ 101.)

In its motion to dismiss, Defendant argues that it did not owe Plaintiffs a duty of care as its loan servicer. (Def.'s Mot. at 18.) Furthermore, Wells Fargo owed no duty of care to explore foreclosure alternatives. (Def.'s Mot. at 18.) Wells Fargo relies on *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 63 (2013), which simply reiterates that the general rule is that the lender owes no duty of care, but "[w]hether a duty of care exists is a question of law to be determined on a case-by-case basis." *Lueras,* 221 Cal. App. 4th at 62 (citing Parsons v. Crown Disposal Co., 15 Cal.4th 456, 472 (1997)). The foreclosure in *Lueras* occurred before the enactment of HBOR, so there was no requirement to explore foreclosure alternatives. 221 Cal. App. 4th at 67. In the pre-HBOR context, the lender in *Lueras* owed no duty of care to the borrower who does not submit a loan modification application. *Id.* at 62-63. Thus, *Lueras* is not dispositive.

In opposition, Plaintiffs contend that they were owed a duty of care when Wells Fargo

12

1    undertook the activity of reviewing Plaintiff's loan modification and recorded documents that

2    affected the title of their home. (Pls.' Opp'n at 7.)  Plaintiffs' position that a duty was owed in

3    connection with the recordation of the NODs in unavailing, because Wells Fargo was acting

4    within the conventional role of servicer.  Notwithstanding, federal district courts in California are

5    divided on when lenders owe a duty of care to borrowers in the context of the submission of loan

6    modification applications and negotiations related to loan modifications. *See Rijhwani,* 2014 WL

7    890016, at *15-16.

8    Once Wells Fargo provided Plaintiffs with a loan modification application and asked them

9    to submit supporting documentation, and they did so, "Defendant undertook the activity of

10   processing Plaintiff's loan modification request. Having undertaken that task, it owed Plaintiff a

11   duty to exercise ordinary care in carrying out the task." *Penermon v. Wells Fargo Bank*, *N.A.,* 47

12   F. Supp. 3d 982, 1001 (N.D. Cal. 2014); *Garcia v. Ocwen Loan Servicing, LLC*, C 10-0290 PVT,

13   2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010); *see also Rijhwani,* 2014 WL 890016, at *16.

14   In order to determine "whether a financial institution owes a duty of care to a borrower-client,"

15   courts must balance the following non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

19   *Nymark,* 231 Cal. App. 3d at 1098 (quotation marks and citations omitted).

20   In the processing of a loan modification application, the transaction is unquestionably

21   intended to affect Plaintiffs, as the decision would determine whether or not they could keep their

22   home. *Penermon*, 47 F. Supp. 3d at 1002. Second, the potential harm from mishandling the

23   application is readily foreseeable as it is the loss of an opportunity to keep her home. *Id.*  Third,

24   the injury to Plaintiffs is certain, as Plaintiffs could lose the opportunity to potentially modify their

25   loan and their home could be sold. *Id.*  Fourth, there is a close connection between Wells Fargo's

26   conduct of allegedly not processing the application and the pending foreclosure of Plaintiffs'

27   home. *Id.*  Fifth, whether or not moral blame attaches to Wells Fargo's conduct is unclear at this

28   state of the litigation, but the uncertainty is insufficient to find that there was no duty of care. *Id.*;

*see also Garcia,* 2010 WL 1881098, at *3.  Sixth, California's enactment of HBOR and the federal government's home owner assistance programs, such as HAMP, shows the existence of the public policy of preventing future harm to borrowers caught in the foreclosure crisis.

Plaintiffs do not allege facts, however, to support their contention that Wells Fargo breached the duty of care.  For example, the operative complaint is unclear as to whether Plaintiffs ever received a disposition on their loan modification application let alone what actions Wells Fargo took that could constitute breach.  At the hearing, Plaintiffs conceded that their loan modification application was never acknowledged as being complete.  Furthermore, even though Plaintiffs allege that the application submitted in April 2015 was "complete," the facts pled regarding Wells Fargo's subsequent communications to obtain additional documentation clearly contradicts that conclusory allegation. (*See* FAC ¶¶ 34-42.)  This is not a situation where Wells Fargo lost the application or failed to process it.  Thus, even if a duty existed as alleged, Plaintiffs cannot allege facts in good faith that constitute breach.

Similarly, Plaintiffs have failed to specify what damages resulted from Wells Fargo's negligence aside from their general claim that they forewent other financing opportunities and that their personal credit suffered.

In light of the above, Wells Fargo did not owe Plaintiffs a duty of care in terms of recordation, so that claim is dismissed without leave to amend.  Furthermore, while Plaintiffs may have been owed a duty to exercise ordinary care in processing their loan modification application, they are unable to allege specific facts regarding breach of duty and damages.  Accordingly, the cause of action is dismissed without leave to amend, because any amendment would be futile.

### v.   Rosenthal Fair Debt Collections Practices Act

Plaintiffs' fifth cause of action is for violation of the Rosenthal Fair Debt Collections Practices Act. (FAC ¶¶ 107-111.)  The Rosenthal Act is intended to "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011)(quoting Cal. Civ. Code § 1788.1).  Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the

ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1089–90 (N.D. Cal. 2015) (quoting Cal. Civ. Code § 1788.2(c)). "[T]he definition of 'debt collector' is broader under the Rosenthal Act than it is under the FDCPA, as the latter excludes creditors collecting on their own debts." Reyes 2011 WL 30759, at *19. "Thus, a mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act." *Id.* (citing *Herrera v. LCS Fin. Servs. Corp.*, No. 09–02843, 2009 WL 5062192, at *2 (N.D. Cal. Dec. 22, 2009)).

Here, Plaintiffs allege that Wells Fargo is a debt collector for the purposes of the Rosenthal Act, because it collected Plaintiffs' mortgage loan payments. (*See* FAC ¶ 110.) Plaintiffs' claim, however, is predicated on the misrepresentations alleged with respect to the fact that they were being evaluated for a loan modification and that foreclosure would not be pursued in the interim, which is the same basis as the fraud, promissory estoppel, and negligence claims. For the same reasons that those allegations failed to state a claim, they likewise fail to state a claim for violation of the Rosenthal Act. Furthermore, Plaintiffs fail to allege which portions of the Act were violated.

Accordingly, Plaintiffs' fifth cause of action is dismissed without leave to amend.

### vi.   Business and Professions Code § 17200

Plaintiffs' sixth cause of action is for unfair and deceptive practices in violation of Business and Professions Code § 17200 et seq. (FAC ¶¶ 112-120.) Section 17200 concerns unfair competition and prohibited activities and states that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). In order to state a claim for UCL, Plaintiff must identify an underlying statute that Defendant violated. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933, 938 (2005) (no § 17200 liability "for committing 'unlawful business practices' without having violated another law"). A business practice is "unlawful," in violation of the California Unfair Competition Law (UCL), if it violates

15

another state or federal law; the UCL "borrows" violations of other laws and treats them as independently actionable. *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

Plaintiffs allege that Defendant engaged in fraudulent business practices, and statutory violations (presumably the Rosenthal Act), and unfair business practices by violating law designed to prevent foreclosure (presumably the Homeowner's Bill of Rights), which constitutes unlawful conduct under California Business and Professions Code § 17200 et seq. (FAC ¶¶ 116-118.)

Here, Plaintiffs cannot show that Wells Fargo's actions were unlawful. In order to state a claim for UCL, Plaintiff must identify an underlying statute that Wells Fargo violated. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933, 938 (2005) (no § 17200 liability "for committing 'unlawful business practices' without having violated another law"). Plaintiff appears to identify §§ 2923.55 and 2923.6 as the underlying statutes despite not bringing any claims under HBOR. Nevertheless, HBOR is remedial in nature, and absent the recordation of a trustee's deed upon sale, the only relief available is injunctive relief. Cal. Civ. Code § 2924.12(a). Thus, Plaintiffs cannot state a UCL claim for any violations of HBOR. *See* Cal. Civ. Code § 2924.12(c) ("A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale. . . ."). Additionally, as discussed above, Plaintiffs are unable to allege that Wells Fargo violated the Rosenthal Act. *See* discussion *supra* Part III.B.v. Thus, any claims that Wells Fargo violated those statutes must be dismissed with prejudice, as Plaintiffs fail to allege conduct that falls within the prohibition of any statute. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001).

Additionally, Plaintiff cannot show that Defendant's actions were fraudulent. A business practice is fraudulent if members of the public are likely to be deceived based on the effect it would have on a reasonable consumer. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012). Here, Plaintiffs fail to identify which actions were fraudulent even though they concede that they were not entitled to a loan modification. Thus, there are no facts to support that either the public or Plaintiffs were likely to be deceived. Additionally, as addressed above, Plaintiffs must satisfy the heightened fraud pleading requirements, which they failed to do. *See*

1  *Kearns*, 567 F.3d at 1125.

2  Lastly, Plaintiffs cannot show that Defendant's actions were unfair. Under the unfairness prong, Plaintiffs must allege conduct that is either tied to, or violates, a "legislatively declared policy," or is such that the "utility of the conduct outweighs the gravity of the harm to the alleged victims." *Lozano*, 504 F.3d at 736. "Any claims of unfairness under the UCL should be defined in connection with a legislatively declared policy." *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1166–67 (2000). Here, Plaintiffs make conclusory statements as to how Defendant was unfair by simply stating that Wells Fargo violated the laws and underlying legislative policies designed to prevent foreclosures when possible by requiring lenders and servicers to engage in "honest foreclosure prevention efforts." (FAC ¶ 118.) Plaintiffs, however, concede that Wells Fargo actively engaged in the loan modification process by requesting additional information after the submission of the initial application. (FAC ¶¶ 35-42.) Additionally, at the hearing, Wells Fargo stated, and Plaintiffs conceded, that they were eligible to be reviewed for a loan modification in connection with the instant case, but Plaintiffs have not submitted any paperwork. Thus, that the 2015 loan modification process never yielded a complete application, for the purposes of HBOR, defeats any cognizable UCL claim.

Accordingly, Defendant's motion to dismiss Plaintiffs' UCL claim is granted without leave to amend.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant Wells Fargo's motion to dismiss Plaintiff's first amended complaint in full and without leave to amend, because any amendment would be futile. The Court notes that the first amended complaint is, in actuality, the fourth version of the complaint between the state and federal court actions.

The Clerk is ordered to close the case.

IT IS SO ORDERED.

Dated: September 6, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge